UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

REFCO, LLC,                                  :

             Plaintiff,                       :

                              :

     – against –                       :

                              :

ALISO TRADING GROUP, INC.,                   :

             Defendants.                      :

- - - - - - - - - - - - - - - - - - x

**COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiff Refco, LLC ("Refco"), by its attorneys, Mayer, Brown, Rowe & Maw LLP, as and for its complaint against defendant Aliso Trading Group, Inc. ("Aliso"), respectfully alleges:

        1.    Refco, a futures commission merchant registered under the Commodity Exchange Act (the "Act") with the Commodity Futures Trading Commission (the "CFTC") and the National Futures Association (the "NFA"), seeks a declaratory judgment that Refco was within its rights both to terminate Aliso's contract as a Refco guaranteed introducing broker and to inform customers of that termination. Refco also seeks damages caused by Aliso's institution of legal proceedings in California in breach of a forum selection clause in the parties' contract.

### Parties, Jurisdiction and Venue

        2.    Refco is a Delaware limited liability company headquartered in Chicago. Through a series of single-member limited liability companies, it is a wholly-

owned subsidiary of Refco Inc., a publicly listed Delaware corporation whose principal place of business is in New York.  Refco is thus a citizen for jurisdictional purposes of Delaware and New York.

3.    Aliso is a Nevada corporation whose principal place of business is in Aliso Viejo, California.  Aliso is thus a citizen for jurisdictional purposes of Nevada and California.

4.    This Court enjoys subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the action is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.    Aliso has agreed by contract to suit in this Court, and is therefore subject to personal jurisdiction in this District.  Venue is thus proper under 28 U.S.C. § 1391(a)(1) because Aliso, as a corporation subject to personal jurisdiction in this District, is considered under 28 U.S.C. § 1391(c) to reside in this District.

### Futures Commission Merchants, Introducing Brokers and Guaranteed Introducing Brokers

6.    A futures commission merchant (or "FCM") such as Refco is the commodity futures market analog to the securities brokerage house.  An FCM solicits, accepts, enters and clears orders for the purchase or sale of commodity futures and options contracts, and it accepts payment from (or extends credit to) those whose orders are accepted.

7.    Accounts can be set up to for direct dealings between the customer and the FCM's in-house brokerage personnel.  Alternatively, accounts can be "introduced" to the FCM through an "introducing broker."  A introducing broker is an independent entity

which solicits and accepts customer orders and accounts.  As with accounts handled by the FCM's internal brokers, introduced accounts are opened directly on the books of the FCM and the FCM handles the acceptance, entry and clearing of orders, as well as record-keeping and retaining customer funds.  Whether the customer deals directly with the FCM or through an introducing broker, the customer has an account with the FCM.

8.    The Act requires introducing brokers to meet minimum capital requirements.  As authorized under CFTC rules, many introducing brokers satisfy this requirement by arranging to be "guaranteed" by the FCM to which they introduce customers.  In this arrangement, the FCM agrees to be jointly and severally liable for all of the introducing broker's obligations under the Act.  The introducing broker in such an arrangement is known as a "guaranteed introducing broker."

### The Refco-Aliso Agreement

9.    Refco and Aliso were parties to a written contract (the "Agreement"), dated August 9, 2002, pursuant to which Aliso became a Refco guaranteed introducing broker.  The Agreement is reproduced as Exhibit 1.

10.    The Agreement provided that Aliso, as introducing broker, would introduce customers to Refco, with Refco to execute and to clear orders and to carry futures contracts for those customers.  Refco's role was to be fully disclosed to the customers.  (*See* Agreement at 1.)

11.    In paragraph 6.01(g) of the Agreement, Aliso promised at all times to "remain in compliance with all applicable capital, financial, reporting and other requirements of the CFTC, NFA … and Refco."

12.   Of all the requirements of Refco within the meaning of paragraph 6.01(g), some of the most important relate to the reporting and processing of customer complaints.  These requirements are of extremely high importance because of the guaranteed introducing broker relationship.  Close adherence to these requirements is necessary because, even where Refco is morally blameless, abuses by its guaranteed introducing brokers would subject Refco to damages suffered by customers and to regulatory discipline from the CFTC, the NFA and others.

13.   In paragrapmh 1.06 of the Agreement, Aliso promised always to notify Refco in writing immediately upon receipt or obtaining knowledge of any complaint by a customer or pending or threatened action or proceeding by any customer with respect to any alleged errors, corrections or other matters relating to any customer account.

14.   Paragraph 1.06 also provided that "Refco at its discretion shall have the exclusive right to respond to, adjust, settle or reconcile any such customer complaint, and any such remedial action taken by Refco shall be binding upon [Aliso]."

15.   Paragraph 7.02(a) set forth related Refco requirements:  "Refco shall have the exclusive right to defend, settle or compromise any claim or demand instituted by a Customer or other third party against Refco or against Refco and [Aliso] arising out of or in respect of any Customer Account or performance by [Aliso] of [Aliso's] duties ….  [Aliso] hereby waives any and all rights [Aliso] may have independently to defend, settle or compromise any such of the foregoing claims or demands …."  Likewise, in paragraph 1.10 Aliso acknowledged that it "shall have no authority to contract for or in the name of Refco or to bind it in any manner whatsoever either with customers or any other party."

– 4 –

16.    Paragraph 10.01(b) authorized Refco to terminate the Agreement immediately upon giving notice of termination to Aliso "if any representation or warranty of [Aliso] contained herein is untrue in any material respect."

17.    In paragraph 11.08, Aliso agreed that it could bring suit against Refco on any matter relating to the Agreement only in state or federal court in New York County, New York, or Cook County, Illinois.  In paragraph 11.09, Aliso submitted to jurisdiction in those forums on any suit by Refco.

### Aliso's Violation of the Agreement

18.    On approximately June 15, 2004, Refco received through the CFTC a reparations complaint by an Aliso-introduced customer ("Mr. L.").  A review of Mr. L.'s complaint indicated that his allegations had been made directly to Aliso over a long period of time.  However, Aliso had never reported Mr. L.'s claims to Refco.  Moreover, a draft release attached to the complaint was evidence that Aliso had attempted to settle Mr. L.'s claim without the permission (and indeed without the knowledge) of Refco.

19.    Upon receiving Mr. L.'s CFTC reparations complaint in June 2004, Refco immediately demanded that Aliso inform Refco of all customer complaints (all of which should have been reported as they arose).  Aliso thereupon faxed Refco copies of five signed releases, each representing a settled customer claim.  One of those claims was settled with a $24,602 Aliso credit to the customer's account.  Aliso had never reported to Refco the claims that resulted in those releases, all of which had been obtained without the permission (and indeed without the knowledge) of Refco.

20.    In the weeks following the June 15, 2004, receipt of Mr. L.'s reparations complaint, at Refco's insistence Aliso revealed to Refco several additional

complaints that had been pending against Aliso, including an unauthorized trading
complaint that had been pending since January 2004.  During that time period, Aliso
customers were also calling Refco directly, or having attorneys contact Refco directly, with
their complaints.  By mid-July 2004, Refco determined that approximately 18 customer
complaints were pending against Aliso.

**Termination of the Agreement**

21.   In view of Aliso's failure to report claims and its efforts to settle
claims without Refco's knowledge or consent – all in breach of the Agreement – on
Thursday, July 15, 2004, Refco terminated the Agreement in accordance with its terms.

22.   The termination of the Refco-Aliso contract meant that, in accordance
with CFTC Regulation 1.65, the Aliso-introduced customers currently on Refco's books
had to be contacted.  The calls informing customers of the termination of the Agreement
were placed by personnel from Refco headquarters in Chicago.  Those Refco employees
explained from a simple script that, while customers could no longer trade their Refco
accounts through Aliso, they could move their accounts to another FCM, or that, if they
preferred to stay with Refco, they could have a Refco account executive appointed to
handle their accounts.

**Aliso's California Action**

23.   On or about July 13, 2005, Aliso instituted an action (the "California
Action") in the Superior Court of the State of California, Orange County, against Refco
and Robert Smock.  (Smock is the manager of a Refco retail branch in Orange County,
California, and not connected with the events in suit.)  The complaint in the California
action alleges that Refco did not have the right to terminate the Agreement with less than

30 days' notice.  It seeks damages from Refco for breach of contract and from Refco and

Smock for supposedly interfering with existing contractual relations.  The California

Action has been removed to the United States District Court for the Central District of

California, Southern Division, where it is pending as Case No. SACV05-821 CJC

(MLGx).

24.   In view of the forum selection clause of the Agreement, Refco expects

that the California Action will be dismissed shortly.

**First Claim for Relief**
**(Declaratory Judgment)**

25.   Refco repeats and realleges paragraphs 1-24 above as though set forth

in full.

26.   Refco seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that

it was within its rights to terminate the Agreement as it did and to contact the Aliso-

introduced customers as it did.

27.   As evidenced by the filing of the California action, an actual

controversy is presented.

28.   In view of Aliso's repeated and persistent failure to report customer

complaints as required by Refco, Refco was entitled under Paragraph 10.01(b) to terminate

the Agreement in the manner it did.

29.   In view of Aliso's repeated and persistent efforts, contrary to the

requirements of Refco, to settle claims without Refco's knowledge or consent, Refco was

entitled under Paragraph 10.01(b) to terminate the Agreement in the manner it did.

30.   CFTC Regulation 1.65 required that the Aliso-introduced customers carried on Refco's books be contacted.

31.   Refco was entitled to inform the Aliso-introduced customer of the termination of the Agreement in the manner it did.

**Second Claim for Relief**
**(Breach of Contract)**

32.   Refco repeats and realleges paragraphs 1-24 above as though set forth in full.

33.   By filing the California Action in a court other than in a state or federal court in Cook County, Illinois, or New York County, New York, Aliso has breached paragraph 11.08 of the Agreement.  This breach has caused damage to Refco in the form of incremental attorneys' fees for which Aliso is liable.

WHEREFORE, plaintiff Refco, LLC seeks judgment, on the First Claim for Relief, declaring that it was within its rights to terminate the Agreement as it did and to contact the Aliso-introduced customers as it did, and, on the Second Claim for Relief, awarding it damages in an amount to be proven for Aliso's breach of the forum selection

clause, and granting Refco such other, further and different relief as to the Court may

appear just and proper.

Dated:   New York, New York
         September 26, 2005

                                    MAYER, BROWN, ROWE & MAW LLP

                                    By:  _____
                                         Richard A. Spehr (RS-8130)
                                         Michael O. Ware (MW-0290)
                                         Henninger S. Bullock (HB-3416)

                                    1675 Broadway
                                    New York, N.Y. 10019
                                    (212) 506-2500

                                    *Attorneys for plaintiff Refco, LLC*

– 9 –

# Exhibit 1 to Complaint

## *Refco-Aliso Agreement*
## *August 9, 2002*

# REFCO, LLC
## Guaranteed Introducing Broker Agreement

AGREEMENT dated ___8/09/02___, between REFCO, LLC, a Delaware Limited Liability Company with its principal office at 550 West Jackson Boulevard, Chicago, Illinois, 60661 ("Refco"), and _Ali So Trading Grvp, LLC_ a corporation with its principal offices at _65 Enterprise A.V. CA92656_ ("Broker").

## WITNESSETH:

WHEREAS, Refco is registered with the Commodity Futures Trading Commission ("CFTC") as a futures commission merchant pursuant to the provisions of the Commodity Exchange Act as (the "Act"), and is engaged in the business of executing and clearing orders for the purchase and sale of futures contracts ("Orders"); and

WHEREAS, Broker is registered with the CFTC as an introducing broker pursuant to the provisions of the Act and is engaged in the business of obtaining customers for Orders; and

WHEREAS, Refco and Broker desire to enter into an agreement pursuant to which Broker will introduce customers to Refco for the purpose of having Refco execute and clear Orders, and carry futures contracts for Broker's customers on a fully disclosed basis subject to the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter set forth, the parties agree as follows:

## 1.00  DUTIES OF BROKER

1.01  **SOLICITATION:** Broker shall clear and execute exclusively through Refco all Orders obtained from present and future customers of Broker (individually a "Customer" and collectively the "Customers"). Broker shall have no authority to contract for or in the name of Refco or to bind it in any manner whatsoever either with Customers or any other party.

1.02   **CUSTOMER ACCOUNTS:**  Broker shall be responsible for opening and establishing a customer account for each Customer in such manner and utilizing such forms as may from time to time be specified or designated by Refco.  Each such account shall be subject to acceptance by Refco (individually a "Customer Account" and collectively the "Customer Accounts"), and Broker shall be responsible for obtaining and delivering to Refco such documentation, including without limitation, forms, agreements or documents as are from time to time required by Refco or required to be filed pursuant to (i) the Act or (ii) the rules and regulations of the National Futures Association ("NFA") or of any commodity exchange or similar entity (an "Exchange") in which any Order is executed or cleared by Refco.

Broker shall maintain in a permanent file copies of all completed forms, agreements and documents required pursuant to this Section 1.02.

1.03   **ORDERS:**  Broker shall transmit Orders to Refco only for established Customer Accounts in the manner and form required pursuant to (a) Refco's operating policies and procedures then in effect, (b) the Act, (c) the rules an regulations of any exchange and the NFA and (d) any other applicable federal or state law or regulation.

1.04   **TRADING LIMITS:**  Broker shall not transmit any Order to Refco that does not comply with the applicable trading position limits established by the CFTC, any Exchange or any Refco operating policy or procedure then in effect.

1.05   **MARGIN ACCOUNTS:**  All monies, checks or other funds received by Broker from Customers to be used to margin, guarantee or secure any trades, futures contracts or trading positions executed, cleared or maintained by Refco for any customer account shall be immediately deposited by Broker into a Refco depository account, and Broker shall maintain complete and accurate records for each Customer Account and of all funds received and disbursed in respect thereof.

1.06   **CUSTOMER COMPLAINTS:**  Broker shall notify Refco in writing, immediately upon receipt or obtaining knowledge of any Customer complaint or pending or threatened action or proceeding by any Customer in respect of any alleged errors, corrections or other matters relating to any Customer Account. Refco at its discretion shall have the exclusive right to respond to, adjust, settle or reconcile any such Customer complaint, and any such remedial action taken by Refco shall be binding upon Broker.

1.07  **PROMOTIONAL MATERIAL:** Broker shall not issue, publish or distribute any advertisement, market letter, market research report or other sales literature utilizing or making reference to the name or facilities of Refco or any of its affiliates without Refco's prior written consent.

1.08  **REPORTS TO REFCO:** In addition to the forms and documents required to be furnished to Refco pursuant to Section 1.02 hereof, Broker shall provide Refco with copies of all other executed agreements, statements, filings or other documents obtained by Broker upon opening and establishing any Customer Account. Broker shall provide Refco with copies of all financial statements, reports or other financial information required to be furnished by Broker to any governmental authority or regulatory body (including without limitation, any Exchange or the NFA), and in addition, shall provide Refco with such other financial statements and information as Refco may request. Broker shall complete and submit to Refco any report, form or application in respect of any Customer or Broker's business practices as Refco may deem necessary and appropriate.

1.09  **RELIANCE UPON COMMUNICATIONS FROM BROKER:** Refco shall be entitled to rely upon any oral or written communications or instructions received from Broker, including any of Broker's officers, partners, principals or employees, so long as Refco does not have actual knowledge of the lack of authority of any such person.

1.10  **COMPLIANCE WITH REFCO'S POLICIES AND PROCEDURES:** Broker will at all times comply with all operational policies and procedures of Refco, including but not limited to all matters set forth in Refco, Inc. Compliance Manual ("Manual"), a copy of which has been delivered to Broker.

1.11  **SUSPENSION BY REGULATORY BODY:** In the event that Broker or any associated person thereof shall become subject to suspension or restriction by the CFTC, NFA or any other regulatory body having jurisdiction over Broker and Broker's business, Broker will notify Refco immediately thereof and Broker authorizes Refco to take all such steps as may be necessary for it to maintain compliance with the laws, rules and regulations to which it is subject.

2.00  **DUTIES OF REFCO**

2.01  **EXECUTION AND CLEARANCE OF ORDERS:** Subject to and consistent with the terms and conditions of the Customer Agreement executed by each Customer:

(a)    Refco shall use all reasonable efforts to execute and clear all Customer Orders received from Broker.  Notwithstanding any statement to the contrary by Refco or any of its officers, employees or agents, no acceptance of any order by Refco shall be construed as a guarantee of the execution or clearance of such Order by Refco.  Refco shall promptly notify Broker of the execution and clearance of each Order received by it from Broker.

(b)    Refco shall have the right to refuse to execute and clear any customer Order received from Broker

    (i)    until the Customer satisfies its outstanding margin requirements or any other debit account balance owing to Refco;

    (ii)    whenever Refco determines that such Customer may not have sufficient financial resources to properly margin the trading positions proposed to be taken; or

    (iii)    for any other reason Refco, in its sole business judgment, deems to be appropriate.  Refco shall promptly notify Broker of its refusal to execute or clear any Order.

(c)    Refco shall have the right to liquidate any or all trading positions in any Customer Account

    (i)    to satisfy any outstanding margin requirements or any other debit account balances owing to Refco, or

    (ii)    for any other reason Refco, in its sole business judgment, deems to be appropriate.  Refco shall promptly notify Broker of each liquidation by it in respect of any Customer Account.

2.02    **REPORTS TO BROKER:**  Refco shall provide Broker with copies of such statements and notices in respect of each Customer Account as are provided for in the Manual or otherwise required under the Act, by the CFTC or by the NFA.

## 3.00    RECONCILIATION OF TRADES

3.01    (a)    Broker shall verify, in accordance with Refco's operating policies and procedures as set forth in the Manual, the accuracy and completeness of all Orders transmitted to Refco for execution and clearance.

    (b)    Any loss resulting from an Order which is improperly entered, executed or cleared shall be reconciled and discharged by Refco or Broker on

such terms as they may mutually agree upon, provided, however that in the event Refco and Broker are unable to agree upon such terms, Refco shall, in its sole business judgment, determine the terms on which such loss will be satisfied, such determination to be the legal, binding and enforceable obligation of the parties in accordance with its terms.

## 4.00  COMMISSIONS, FEES AND REMITTANCES

4.01  **ACCRUED COMMISSIONS:**  Subject to Refco's right of set off pursuant to Section 5.01 hereof, Refco shall accrue and credit Broker with commissions charged to Customer Accounts for Orders obtained by Broker in accordance with instructions from Broker, and shall accrue and charge Broker with Refco's fee for executing and clearing Orders. On a monthly basis, Refco shall pay to Broker compensation as set forth on Schedule A attached hereto. Refco shall remit to Broker monthly, on or about the 15th day of the month following the months during which Orders are executed and cleared, the balance of net accrued commissions in excess of net accrued fee charges for said month ("Net Remittances"). Refco shall maintain complete and accurate records relating to all Net Remittances and of such amounts set off or applied against Net Remittances pursuant to Section 5.01 hereof.

4.02  **EXPENSES:**  All expenses of Broker incident to or arising out of this Agreement shall be the responsibility of and payable by Broker and Refco shall not be obligated, without its prior written consent, to pay any such expenses of Broker.

## 5.00  SET OFF

5.01  (a)  Refco shall in its reasonable sole discretion and without notice to Broker, have a right to set off and apply net remittances payable and such other assets or funds of Broker in the possession, custody or control of Refco or any of its affiliates, in whole or in part (in such order as Refco shall elect), against any amount owing at any time to Refco by Broker, including but not limited to

(i)  debit balances in Customer Accounts or in proprietary accounts carried with Refco by Broker or any of its principals, officers, members of their respective immediate families or their respective family-controlled entities,

(ii)  error accounts,

(iii)  expenses paid or advanced by Refco on behalf of Broker, or

    (iv)     indemnities of Broker hereunder (collectively the "Obligations"). Refco agrees to promptly notify Broker after the exercise by it of its right of set off hereunder, provided, however, that the failure to give such notice shall not affect the validity of such set off. Broker agrees to notify Refco promptly of the creation or existence of any propriety accounts as provided in (a) of this subparagraph (i).

    (b)    Refco's rights of set off are in addition to all other rights and remedies available to Refco pursuant to this Agreement or otherwise.

## 6.00    WARRANTIES, REPRESENTATIONS AND COVENANTS OF BROKER

6.01    Broker, in order to induce Refco to enter into and to perform this Agreement, does hereby represent and covenant to Refco as follows:

    (a)    Broker is a corporation duly organized, validly existing and in good standing under the laws of the State of _NevAñA_, and is qualified to do business in such other states as the nature of its business activities and properties therein may require.

    (b)    Broker has the right and power to enter into and perform its duties under this Agreement; has taken all requisite corporate action to authorize the execution, delivery and performance of this Agreement and the transactions contemplated herein; and that this Agreement has been duly authorized, executed and delivered by Broker and is binding upon and enforceable against it in accordance with the terms thereof.

    (c)    Neither the execution, delivery and performance of this Agreement by Broker nor the consummation of any transaction contemplated otherwise, conflict with, result in a breach of, or constitute a default under or violate, as the case may be,

        (i)     the Articles of Incorporation or Bylaws of Broker,

        (ii)    or any foreign, federal, state or local law, statute, ordinance, rule or regulation,

        (iii)    or any court or administrative order or process or

        (iv)    any contract, agreement, arrangement, commitment or plan to which Broker is a party or by which Broker may be bound.

(d)     Broker is and at all times during the term hereof will be a validly registered introducing broker in accordance with the Act and the rules and regulations of the CFTC.

(e)     Broker is and at all times during the term hereof will be a member in good standing of NFA.

(f)     Each officer, partner or employee of Broker (or any person occupying a similar status or performing similar functions) in any capacity which involves either the solicitation or acceptance of an Order (other than in a clerical capacity) or involves the supervision of any person or persons so engaged is and at all times during the term hereof will be a validly registered associated person of Broker in accordance with the Act and the rules and regulations of the CFTC.

(g)     Broker is and at all times during the term hereof will be and remain in compliance with all applicable capital, financial, reporting and other requirements of the CFTC, NFA, Exchanges and Refco.

(h)     Broker shall keep confidential any information Broker may acquire as the result of this Agreement regarding the business and affairs of Refco, and shall make available to third parties only such agreements, documents and papers supplied by Refco as may be authorized by Refco in writing or pursuant to any order, subpoena or other process of a court or regulatory body of competent jurisdiction.  Broker shall give Refco prompt notice of the receipt by Broker of any such order, subpoena or other process.

## 7.00   INDEMNITY OF REFCO BY BROKER

7.01    Broker agrees to indemnify and hold Refco harmless from and against

(a)     any and all claims, demands, proceedings, suits and actions against Refco, and

(b)     any and all losses, liabilities, damages, expenses and costs (including attorneys' fees) suffered by Refco, resulting from or relating to

(i)     any breach by Broker of Broker's duties or obligations under this Agreement,

(ii)    any inaccuracy or misrepresentation in, or breach of, any of the warranties, representations, covenants or agreements made by Broker herein,

(iii)    any margin requirement or other debit account balance owing to Refco in respect of any Customer,

(iv)    any claims, liabilities or demands of Refco (except any claim, liability or demand not caused by any action or inaction of Broker) in respect of any Customer arising out of or relating to any agreements between any such Customer and Refco or Broker (including, without limitation, Broker's failure to properly supervise, manage or maintain any such Customer's Account or to act in accordance with any such Customer's instructions),

(v)    any and all debts, liabilities, taxes and other obligations, and any and all claims, demands and chargebacks, of, against or with respect to, Broker or any of the business, whether accrued, absolute, contingent or otherwise, not expressly agreed to be assumed or undertaken by Refco herein, and

(vi)    any debts, liabilities or obligations arising from the failure of Broker to comply with the Act, the rules and regulations of the CFTC, NFA and any Exchange or with any other applicable laws or regulations of any jurisdiction or agency thereof.

7.02    (a)    Refco shall have the exclusive right to defend, settle or compromise any claim or demand instituted by a Customer or other third party against Refco or against Refco and Broker arising out of or in respect of any Customer Account or performance by Broker of Broker's duties hereunder regardless of whether Refco has exercised its right of set off pursuant to Section 5.01 hereof.  Broker hereby waives any and all rights Broker may have independently to defend, settle or compromise any such of the foregoing claims or demands and agrees to cooperate to the best of its ability with Refco with respect thereto, but Refco may, in its sole discretion, authorize and require Broker to defend, settle or compromise any such claim or demand as it deems to be appropriate at the cost, expense and liability of Broker.

(b)    Refco shall have the exclusive right to commence and maintain any action pursuant to the Act, the rules and regulations of the CFTC, NFA or any Exchange, or any law against a Customer or other third party for any claim or demand which Refco, or Refco and Broker jointly, may have at any time arising out of or in respect of any Customer Account or the performance by Broker of Broker's duties hereunder, regardless of whether

(i)    any such claim or demand gives or may give rise to a right of indemnification from Broker to Refco, or

(ii)   Refco has exercised its right of set off pursuant to Section 5.01 hereof. Broker hereby waives any and all rights Broker may have independently to assert, settle or compromise any such action in respect of such claims or demands and agrees to cooperate to the best of Broker's ability with Refco with respect to the bringing, enforcement and collection of any such claim or demand, but Refco may, in its sole discretion, authorize and require Broker to commence and maintain such actions in respect of any such claim or demand as it deems to be appropriate at Broker's cost and expense. Notwithstanding anything contained in this Section 7.02 (b) to the contrary, Refco shall take no action to defend, settle or compromise any claim or demand described in this section 7.02 (b) unless it has discussed all issues with Broker.

## 8.00   INDEMNITY OF BROKER BY REFCO

8.01   Refco agrees to indemnify and hold Broker harmless from and against

(a)    any and all claims, demands, proceedings, suits and actions against Broker and

(b)    any and all loses, liabilities, damages, expenses and costs (including attorney fees) suffered by Broker, resulting from or relating to

(i)    any breach by Refco of Refco's duties or obligations under this Agreement,

(ii)   any inaccuracy or misrepresentation in, or breach of, any of the warranties, representations, covenants or agreements made by Refco herein,

(iii)  any claims, liabilities or demands of Broker in respect of any Customer or any other third party that are caused by any action or inaction of Refco,

(iv)   any and all debts, liabilities, taxes and other obligations, and any and all claims, demands and chargebacks, of, against or with respect to Refco or any of the business, whether accrued, absolute, contingent or otherwise, not expressly agreed to be assumed or undertaken by Broker herein,

(v) any debts, liabilities or obligations arising form the failure of Refco to comply with the Act, the rules and regulations of the CFTC, NFA and any Exchange or with any other applicable laws or regulations of any jurisdiction or agency thereof.

## 9.00 NOTICE TO CUSTOMERS

9.01 Refco may provide, or cause to be provided, to each Customer upon the opening with it of a Customer Account, notice of the existence of this Agreement and the general relationship established with Broker thereunder, setting forth the allocation of responsibility between Refco and Broker with respect to matters relating to customers.

## 10.00 TERMINATION

10.01 This Agreement may be terminated in no manner other than the following:

(a) By Refco or Broker at any time upon thirty (30) days notice of termination given to the other party.

(b) By Refco or Broker effective immediately upon giving notice of termination if any representation or warranty of Broker contained herein is untrue in any material respect.

(c) By Refco automatically and immediately upon Broker's:

(i) being no longer validly registered as an introducing broker with the CFTC; or

(ii) being no longer a member in good standing of the NFA; or

(iii) being suspended by any Exchange of which it is a member; or

(iv) ceasing to conduct its business substantially as presently inducted; or

(v) becoming insolvent, making an assignment for the benefit of Broker's creditors, being unable to meet Broker's debts as they mature or making an admission in writing to that effect, filing for or suffering to be filed against Broker any petition under any provision of any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt or similar law or statute and, in the case of a petition filed against Broker, such petition shall continue indisposed for a period of thirty (30) days.

(d)     By Refco if Broker is in default in making payment of any of the obligations hereunder, and payment thereof is not made within ten (10) days after demand therefor is made by Refco.

(e)     By Refco or Broker if the other party shall have defaulted in any material respect in the performance of any other term, covenant, agreement or condition to be performed by such party hereunder and such default has not been cured within ten (10) days after the giving of notice thereof to such defaulting party.

Refco's rights of termination hereunder shall be in addition to all other remedies and rights to which it may be entitled under this Agreement.

## 11.00   **MISCELLANEOUS**

11.01   Each party will pay its own costs and expenses (including attorneys' fees, accountants' fees and other professional fees and expenses) in connection with the negotiation, preparation, execution and delivery of this Agreement, except as may otherwise be specifically provided for herein.

11.02   This Agreement embodies the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all negotiations, representations, warranties, commitments, offers, contracts and writings made or entered into prior to the date hereof.  No waiver of any provision nor modification or amendment of any provision of this Agreement shall be effective unless in writing duly signed by the party charged thereby.

11.03   No failure to exercise and no delay in exercising on the part of Refco or Broker of any right, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

11.04   The section headings contained herein are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

11.05   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.06   Any provision hereof which is prohibited, invalid or unenforceable shall be ineffective only to the extent of such prohibition, invalidity or unenforceability without invalidating the remaining provisions hereof.

11.07   This Agreement shall be binding upon the successors and permitted assigns of the parties hereto provided, however, neither this Agreement nor any rights

hereunder shall be assignable by the parties hereto without the express written consent of the other except that Refco may assign this Agreement to any subsidiary or affiliate thereof.

11.08   This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Illinois. An action or proceeding commenced by Broker against Refco involving any matter arising out of or relating to this Agreement shall be brought only in the United States District Court of the Northern District of Illinois or for the Southern District of New York or in a state court of competent jurisdiction located in Cook County, Illinois or New York County, New York.

11.09   For purposes of any action or proceeding involving any matter arising out of or relating to this Agreement, Broker hereby expressly consents and submits to the jurisdiction of all federal and state courts located in Cook County, Illinois and New York County, New York and consents that any process or notice of motion or any other application to any of said courts or a judge thereof may be served within or without such court's jurisdiction by registered or certified mail or by personal service.

11.10   All notices, requests, demands and other communications required to be given under this Agreement shall be in writing and delivered either in person, by certified mail postage prepaid, or by telegram or printed telecommunication, addressed as follows or to such other address as a party may designate in writing, and shall be deemed given upon such personal delivery, mailing or transmittal by telegram or printed telecommunication, as the case may be:


To Refco:        Refco, LLC.
                 Compliance Department
                 550 West Jackson Boulevard
                 Chicago, Illinois  60661


To Broker:   ALISO TRADING GROUP, LLC
             65 Enterprise
             Aliso Viejo CA 92656

11.11   This Agreement shall not be deemed to establish a joint venture or partnership between the parties, and Broker shall not be deemed to be an        agent or employee of Refco.  Neither Broker nor any of its officers, employees and agents shall be deemed in any manner or under any circumstance to be an employee or agent of Refco, and no such person shall be entitled to any of the rights, protections or benefits provided by Refco to its employees, including without limitation, group insurance of any kind of pensions.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first written above.

[CORPORATE SEAL]                          REFCO, LLC

ATTEST:                                         By _____

_____

[CORPORATE SEAL]                          BROKER

ATTEST:                                         By _____

_____

# GUARANTY

This Guaranty dated _____, is made by the undersigned,
_____ ("Guarantor"), in favor of Refco, LLC, a Delaware Limited Liability
Company ("Refco") in order to induce Refco to enter into an Guaranteed Introducing Broker
Agreement between Refco and _Aliso Trading Corp_ ("Broker") dated
__8/09/02_____ (the "Agreement").

FOR VALUE RECEIVED, Guarantor hereby unconditionally guarantees as primary
obligor and not merely as surety, the prompt and due payment in full of all Obligations of Broker
under the Agreement, as said term is therein defined, now or hereafter owning or due to Refco
thereunder; provided, however, Guarantor shall have the right to assert as a defense to any
claim hereunder any defense Broker can assert under the Agreement.  Guarantor further agrees
to be liable hereunder to reimburse Refco for any losses, damages or expenses (including
without limitation, attorneys' fees and other expenses) which Refco may incur in enforcing the
terms of the Agreement and/or this Guaranty (such expenses being collectively the "Collection
Expenses").

Guarantor hereby covenants and agrees that the Guarantor's obligations hereunder:

(a)     are absolute and irrevocable;

(b)     are in no way conditioned or contingent upon any requirement that Refco seek,
        demand payment or exhaust any right to take action against Broker with respect
        to its Obligations under the Agreement;

(c)     shall remain in full force and effect and will not be discharged or affected by any
        circumstance, act or omission whatsoever which, but for this provision, might
        constitute a legal or equitable discharge or otherwise operate to release or
        exonerate Guarantor from its obligations hereunder, it being the intention of
        Guarantor that its guarantee shall be absolute and unconditional in any and all
        circumstances;

This Guaranty shall be governed by, enforced and construed in accordance with the laws of the State of Illinois and Guarantor hereby expressly submits to the jurisdiction of all federal and state courts located in Cook County, Illinois and New York County, New York for purposes of any action or proceeding involving this Guaranty, and consents that any process or notice of motion or other application to any of said courts or to any judge thereof may be served within or without any such court's jurisdiction by registered or certified mail or by personal service.

This Guaranty shall inure to the benefit of and be enforceable by Refco and its successors and assigns, and shall be binding upon and enforceable against Guarantor and its successors and permitted assigns, provided, however, that this Guaranty may not be assigned by Guarantor to any other party without the prior written consent of Refco, and further provided that any such assignment by Guarantor, as consented by Refco, shall not release Guarantor from its obligations hereunder.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed as of the day and year first above written.

By: _____

WITNESS:

_____